# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILMA KNAPP,                           :
                                       :
      **Plaintiff,**                 :
    v.                                :    **3:18-CV-1941**
                                       :    **(JUDGE MARIANI)**
SUSQUEHANNA VILLAGE FACILITY           :
OPERATIONS, LLC,                       :
                                       :
      **Defendant.**                 :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On October 8, 2018, Plaintiff Wilma Knapp, on behalf of herself and other similarly situated plaintiffs, filed this class action lawsuit (Doc. 1) against Defendant Susquehanna Village Facility Operations, LLC., alleging that Defendant breached its contractual obligation when it unilaterally eliminated its employees' accumulated sick and vacation leave (Count I), and that, by breaching its contractual obligation, Defendant violated the Pennsylvania Wage Payment and Collection Law ("WPCL") (Count II). (*Id.*). Pled in the alternative, Knapp's Complaint also alleges, based on Defendant's elimination of its employees' accumulated sick and vacation leave, promissory estoppel (Count III) and unjust enrichment (Count IV). (*Id.*).

Susquehanna Village Facility thereafter filed a Motion to Dismiss Plaintiff's Complaint (Doc. 6), which is now before the Court. The issues have been fully briefed and

Defendant's Motion is ripe for disposition. For the reasons set forth below, the Court will deny Defendant's Motion to Dismiss.

## II. FACTUAL ALLEGATIONS

Knapp's Complaint (Doc. 1) alleges the following facts, which, for the purpose of resolving Defendant's Motion to Dismiss (Doc. 6), the Court takes as true:

Defendant Susquehanna Village Facility Operations, LLC., operates nursing, assisted living, and rehabilitation facilitates throughout several states. (Doc. 1, at ¶ 5). Defendant operated a nursing home in Millersburg, PA, which employed over fifty individuals. (*Id.* at ¶¶ 6-7). Plaintiff Wilma Knapp worked as a nurse at the Millersburg, PA Facility at an hourly pay rate of $26.66. (*Id.* at ¶ 12, 13).

Defendant distributed an "Employee Guidebook" (*see* Doc. 1, Ex. A, at 11-36) to all employees. (Doc. 1, at ¶ 8). The Guidebook provided employees with an overview of Defendant's policies. (*Id.* at ¶ 8). Defendant "tried to make the guidebook as complete as possible" and expected employees to "familiarize [themselves] with its content without delay." (*Id.* at ¶ 8). Defendant's Guidebook states the following regarding its sick leave policy: "Sick leave is accrued at a rate equal to 10 days per year, there is no maximum cap for the number of sick days employees may carry-over and earn." (Doc. 1, at ¶ 9; *Id.*, Ex. A, at 27). Defendant's Guidebook also states the following regarding its vacation leave policy: "You may carry over unused vacation days up to a maximum of two times your annual accrual amount." (Doc. 1, at ¶ 10; *Id.*, Ex. A, at 26). Each pay period, the Susquehanna

2

Village Facility Operations employees' pay stubs reflected the aggregate number of sick leave and vacation leave hours earned by and available to each employee. (Doc. 1, at ¶ 11).

Knapp and other employees received the Guidebook and earned, accumulated, and used sick leave and vacation leave pursuant to the policies enumerated in the Guidebook throughout their employment with Susquehanna Village Facilities Operations. (*Id.* at ¶ 14). By mid-September 2017, Knapp had accumulated 1,019 hours of sick leave and 120 hours of vacation leave. (*Id.* at ¶ 15). Knapp alleges that these hours carry a monetary value of approximately $30,365.74. (*Id.*).

Throughout her employment, Knapp understood that she was accumulating sick and vacation time pursuant to the policy articulated in the Guidebook based on "the tally of aggregate earned leave time appearing on [Knapp's] pay stubs and by Defendant's actual course of conduct in administering the leave program." (*Id.* at ¶ 16). Knapp relied on this understanding and, as a result, did not pursue other employment opportunities "because changing employers would result in the loss of many years of earned leave time that she understood would be available to her in her time of need." (*Id.* at ¶ 16).

In 2017, Defendant informed Knapp and other employees that "their earned and accumulated leave time was being eliminated in order to facilitate Defendant's sale of the Millersburg Facility to a nursing home company called Priority Healthcare Group." (Doc. 1, at ¶ 17). Thereafter, each employee's accrued sick leave and vacation "was summarily and

unilaterally wiped-out" and "no consideration was offered or paid." (*Id.* at ¶ 17). Knapp

alleges that Defendant's unilateral elimination of its employees' earned and accumulated

vacation and sick leave time enabled Defendant to sell the facility for a higher purchase

price "than the price that would have been realized had Defendant's leave time liabilities

been honored." (*Id.* at ¶ 18).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff

must aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations,

alterations, and quotations marks omitted). In other words, "[f]actual allegations must be

enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of*

*Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and

quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint

4

and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal

conclusions and threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14

(3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the

presumption of truth attaches only to those allegations for which there is sufficient 'factual

matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839

F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

"Conclusory assertions of fact and legal conclusions are not entitled to the same

presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it

does require a pleading to show 'more than a sheer possibility that a defendant has acted

unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at

678). "The plausibility determination is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting

*Iqbal*, 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment

would be inequitable or futile, the court must inform the plaintiff that he or she
has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant moves to dismiss all four Counts of Knapp's Complaint, asserting a failure
to meet the pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).
(Doc. 6). Defendant further contends that the dismissal of Knapp's claims also requires
dismissal of the underlying class action suit. (*Id.*) The Court examines Defendant's
arguments with respect to dismissing each Count and the underlying class action suit
separately below.

### 1. Count I – Breach of Contract

Knapp's Complaint alleges that Defendant Susquehanna Village Facility Operations
breached its contractual obligation to honor the sick leave and vacation time earned and
accumulated by Plaintiff and the class members. (Doc. 1, at ¶ 27). Susquehanna Village
Facility, in its brief in support of its motion to dismiss (Doc. 7), advances several arguments
as to why Knapp's Complaint fails to state a claim for breach of contract. Defendant
contends that, in her complaint, Knapp relies on the Guidebook to establish a contract, but
the Guidebook cannot constitute an enforceable contract because it explicitly disclaims the
creation of an employment contract and allows Defendant to change its policies at any time.
(*Id.* at 6). Moreover, Defendant argues that Knapp failed to plead any facts to overcome her
at-will employment status, which otherwise precludes the possibility that any express or

6

implied contract was formed. (*Id.* at 4-5). Finally, Defendant argues that Knapp cannot state a claim because no contractual basis exists for the relief that Knapp is seeking: "continuation of accrual or payout of leave after Defendant's sale of the operation." (*Id.* at 6).

In Pennsylvania, a breach of contract claim requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). With respect to the first element, a contract may be "manifest orally, in writing, or as an inference from the acts and conduct of the parties." *Sullivan v. Chartwell Inv. Partners,* LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). An express contract "is formed when the terms of an agreement are declared by the parties." *Dep't of Envtl. Resources v. Winn*, 597 A.2d 281, 284, n. 3 (1991). On the other hand, "a contract implied in fact . . . arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their actions in light of the surrounding circumstances." *Cameron v. Eynon,* 3 A.2d 423, 424 (Pa. 1939).

"A handbook distributed to employees as inducement for employment may be an offer and its acceptance a contract." *Morosetti v. Louisiana Land & Exploration Co.*, 564 A.2d 151, 152 (Pa. 1989). However, it is well-established law that "to find that . . . a handbook has legally binding contractual significance, the handbook or an oral

7

representation about the handbook must in some way clearly state that it is to have such

effect." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 215 (Pa. Super. Ct. 1997). The

inclusion in an employer-promulgated handbook of a policy, without more, does not present

an enforceable agreement. *See id.* "It is not sufficient to show only that [the employer] had

a policy. It must be shown that [the employer] intended to offer it as a binding contract. Nor

can [the employer's] intention be proved by bits and pieces of [its] policy given individual

employees at different times under varying circumstances." *Morosetti*, 564 A.2d, at 152-53.

Thus, "[g]enerally, explicit disclaimers of contract formation in an employee

handbook preclude a breach of contract claim" based on an employee handbook alone.

*Caucci v. Prison Health Servs., Inc.*, 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001).

Nonetheless,

> provisions in a handbook or manual can constitute a unilateral offer of
> employment which the employee accepts by the continuing performance of his
> or her duties. A unilateral contract is a contract wherein one party makes a
> promissory offer which calls for the other party to accept by rendering a
> performance. In the employment context, the communication to employees of
> certain rights, policies and procedures may constitute an offer of an
> employment contract with those terms. The employee signifies acceptance of
> the terms and conditions by continuing to perform the duties of his or her job;
> no additional or special consideration is required.

*Braun v. Wal-Mart Stores*, 24 A.3d 875, 941 (Pa. Super. Ct. 2011) (quoting *Caucci*, 153 F.

Supp. at 611).

Accordingly, Pennsylvania courts have recognized that a contract may be formed if

an employer offers some benefit or reward in exchange for a particular result or action (such

8

as remaining employed by the employer), notwithstanding an employee's at-will status or a disclaimer in an employee handbook. *See, e.g., Ryan v. Prudential Ins. Co. of Am.*, 2004 WL 2406689, at \*2 (E.D. Pa. 2004) (denying Defendant's motion to dismiss on breach of contract claim because Plaintiff sufficiently pled existence of contractual right to bonus payments, which he accepted by continuing performance of his duties); *Caucci*, 153 F. Supp. 2d at 611 (denying Defendant's motion to dismiss on breach of contract claim because, despite disclaimer in Handbook precluding employment contracts, Defendant's actions plausibly suggested that employee was contractually entitled to overtime pay). In these circumstances, "[t]he Employee Handbook is not the sole basis for the alleged contract, but a factor contributing to the Plaintiff's understanding of their employment agreement." *Masterson v. Fed. Express Corp.*, 2008 WL 4415700, at \*4 (M.D. Pa. 2008). Put differently, "the handbook is relevant, but not a *sine qua non* of the existence of the contractual obligation." *Id.*

Here, the Complaint alleges that Knapp had an understanding that she accrued sick leave and vacation time through the combination of Defendant's handbook and its course of action. (Doc. 1, at ¶ 16). The Guidebook articulated the relevant policies (*id.* at ¶¶ 9-10), and Defendant implemented those policies and reflected the aggregate earned sick and vacation time on each pay stub for the several years that Knapp was employed by Defendant (*id.* at ¶ 16). Thus, Knapp, based largely on Defendant's historical and consistently followed course of action, but also informed by the written policy in the

9

Guidebook, alleges that she reasonably understood that by remaining employed with Defendant, each year she would accrue a certain number of sick and vacation days, depending on the length of her tenure with Defendant. As such, taking Knapp's allegations as true, the implied contract appears to be Defendant's promise to provide sick and vacation days and permit the accrual thereof in exchange for working and remaining employed by Defendant.

The plausibility of Knapp's contract claim with respect to sick leave and vacation time is buttressed by Defendant's description of the vacation or sick leave, which uses verbiage, such as "accrued" or "earned" (Doc. 1, Ex. A, at 23-24). The words "accrued" and "earned" suggest a legal entitlement and nonmodifiable benefit. *See, e.g., Accrue*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th ed. 2009) (defining accrue as "to come into existence as a legally enforceable claim"); RESTATEMENT OF EMP. L. § 3.04, cmt. b (AM. L. INST. 2015) ("The terms 'vested,' 'accrued,' and 'earned' are used in this Chapter as synonyms for nonmodifiable benefits."). That understanding of the word "accrued" is consistent with its meaning in other legal contexts. *See, e.g., Strauss v. Springer*, 817 F. Supp. 1203, 1210 (E.D. Pa. 1992) (holding that "the legislature cannot extinguish a cause of action that has already accrued . . . and [a subsequently enacted statute] cannot be applied retroactively to plaintiff's negligence cause of action"). Thus, it follows that Knapp has plausibly pleaded that she has a legal entitlement to the benefits, since she met the condition for receiving and accruing sick leave and vacation time by continuing to work for

Defendant and had received those benefits for several years pursuant to the policy published by Defendant.

Knapp further alleges that Defendant breached the contract for accrued sick leave and vacation leave by summarily and unilaterally, without further consideration, eliminating its employees' accrued and accumulated vacation and sick days. (Doc. 1, at ¶ 17). Knapp's claim, that Defendant breached the implied contract with respect to sick leave and vacation time, is, therefore, not implausible and thus, she has sufficiently stated a cause of action for breach of contract.

Defendant argues that the language in the Guidebook that disclaims the formation of a legally binding contract "negates any claim that Defendant intended to be bound by contractual terms." (Doc. 7, at 7). In particular, Defendant directs the Court to the provision of the Guidebook which states that the employer "reserves the right to revise the policies or procedures in this guidebook, in whole or in part, at any time, without notice." (Doc. 1, Ex. A, at 15).

While the language here may be reasonably construed to suggest that Defendant could modify any policy for which work was to be performed prospectively, nothing in the provision suggests that Defendant had any right to retroactively modify its policy as to completed work. The Guidebook's disclaimer language and the Defendant's promise of accrual of sick leave and vacation time present a patent ambiguity that precludes dismissal of Plaintiff's complaint based upon the Defendant's disclaimer language. Thus, whether the

Defendant reserved any right to modify a policy retroactively, particularly, a policy conferring the promise to employees that sick leave and vacation time, once earned, became accrued and nonforfeitable benefits, states a valid cause of action. *See, e.g., Bertolino v. Controls Link, Inc.*, 2014 WL 5148159, at \*4 (W.D. Pa. 2014) ("[The language of the employee handbook] may *not* be reasonably construed to disclaim . . . the other terms/obligations undertaken by Defendant for work performed by Plaintiff (which Defendant was, as by the Handbook's terms, free to modify prospectively, but which Defendant was *not* free to modify retrospectively as to completed work)."); *McGough v. Broadwing Communs., Inc.*, 177 F.Supp. 2d 289, 296 (D. N.J. 2001) (applying Pennsylvania law, "while the language of the Plan's disclaimer may reserve Broadwing's right to alter the nature and extent of Plaintiffs' compensation for future services, it cannot and does not permit Broadwing to retroactively modify the terms of Plaintiffs' compensation for work performed prior to such modifications"). Yet, based on Knapp's Complaint, Defendant's actions – that it eliminated Knapp's sick leave and vacation time, which she accrued based on work she already performed for Defendant (Doc. 1, at ¶ 17) – when taken as true, did precisely that, i.e. retroactively modify the terms of the sick leave and vacation policy. Therefore, Knapp has plausibly alleged that she had accrued an unmodifiable benefit irrespective of the generalized disclaimer language that the Defendant placed in the Guidebook and on which it relies in support of its motion to dismiss.

Defendant also argues that Knapp failed to state a claim because Knapp's at-will employment status precludes the creation of any employment contract, including the one that Knapp alleges was formed. (Doc. 7, at 4). Here, however, Knapp is not alleging wrongful discharge, but rather that Defendant breached a contract collateral to her at-will status by summarily and unilaterally eliminating her accrued and accumulated paid vacation and sick leave. (Doc. 1, at ¶ 7). Put differently, the apparent contract regarding the accrual of sick leave and vacation time is entirely severable from Defendant's ability to terminate Knapp at any time, with or without cause. In these specific contexts, as discussed above, courts have held that obligations, such as the one contemplated in this matter, exist as "a contract incidental or collateral to at-will employment." *Caucci*, 153 F.Supp. 2d at 611 (quoting *Pilkington v. CGU Ins. Co.*, 2000 WL 33159253, at *6 (E.D. Pa. 2001)). Thus, Knapp's at-will status does not necessarily preclude the agreement contemplated in Knapp's Complaint.

Defendant, in its reply brief, contends that it "ceased to operate the facility at which Plaintiff worked (and thereby, plainly ceased to employ Plaintiff)," thereby depriving Knapp of any right to her accrued sick leave or vacation time. (Doc. 12, at 8). However, at this point, Plaintiff has not alleged any facts to suggest that she was terminated. More significantly, the Complaint alleges that the elimination of paid vacation and sick leave occurred before the sale of the business was finalized. (Doc. 1, at ¶ 17). Thus, taking the

13

allegations as true and drawing every inference in Plaintiff's favor, the Court cannot conclude that Knapp was terminated at the time her benefits were eliminated.

Finally, Defendant asserts that Knapp has not properly pled a claim because there is no contractual provision for the relief that Knapp is seeking: "continuation of accrual or payout of leave after Defendant's sale of the operation." (Doc. 7, at 6). However, "a plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998). As discussed above, the contract claim presented by the pleadings has been adequately pleaded. Thus, damages from the alleged breach of contract have been asserted as $30,365.74 (*see* Doc. 1, at ¶ 15). Therefore, the Court finds that Knapp has pled sufficient facts to put Defendant on notice of Plaintiff's breach of contract claim. *See Masterson,* 2008 WL 4415700, at *4 (finding that Defendant was sufficiently put on notice where contract claim presented by pleadings is not implausible and breach of contract resulted in damages).

In sum, the Court concludes that, taking the allegations in Knapp's Complaint as true and drawing every inference in Knapp's favor, based on the aforementioned considerations, that it is plausible that a contract with respect to the accrued sick leave and vacation time existed, and that the contract was breached when Defendant summarily eliminated the accrued sick leave and vacation time. Defendant has not met its burden to show that no

14

claim has been stated. Accordingly, Defendants' Motion to Dismiss with respect to Count I will be denied.

## 2. Count II – Pennsylvania Wage Payment and Collection Law

Knapp pleads a claim under WPCL based on the her breach of contract claim. (Doc. 1, at ¶¶ 29, 30). Defendant argues that Knapp failed to plead sufficient facts to make out a claim under the WPCL because "there is no contract upon which it is based." (Doc. 7, at 6-8).

"The WPCL was enacted to provide employees a means of enforcing payment of wages and compensation withheld by an employer." *Ely v. Susquehanna Aquacultures, Inc.*, 136 A.3d 6, 13 (Pa. Super. Ct. 2015) (quoting *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1109 (Pa. Super. Ct. 2006)). The Act defines "wages" to include fringe benefits, such as vacation, holiday, or guaranteed pay. 43 Pa. Stat. Ann. § 260.2a. "Any employe[1] or group of employes, labor organization or party to whom any type of wages is payable may institute actions provided under [the WPCL]." *Id.* at § 260.9a. The WPCL does not create a right to compensation, but instead "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990). In order to make out claim under the WPCL,

> the plaintiff need not plead the existence of any formal employment contract. Rather the plaintiff need only plead the existence of some contractual agreement to pay wages that defendant now owes to the plaintiff. Such a

---

[1] The WPCL and related regulations use the words "employe" and "employes" rather than "employee" and "employees."

binding agreement may be express or, as the Third Circuit noted in *De Asencio,* it may be implied. In the context of an employment relationship "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *McGough v. Broadwing Commc'ns, Inc.,* 177 F. Supp. 2d 289, 297 (D.N.J. 2001) (quoting *Martin v. Little, Brown and Company,* 450 A.2d 984 (1981)).

*Euceda v. Millwood, Inc.,* 2013 WL 4520468, at *4 (M.D. Pa. Aug. 26, 2013)

Here, as discussed above, because the Court has concluded that Knapp has sufficiently pled a breach of contract claim, the Court also concludes that Knapp has sufficiently pled a WPCL claim. Defendant's Motion to Dismiss with respect to Count II will, therefore, be denied.

### 3. Count III – Promissory Estoppel

Knapp alleges, in the alternative to her breach of contract claim, a claim of promissory estoppel based on Defendant's elimination of Knapp's sick leave and vacation time. (Doc. 1, at ¶¶ 31-34). Defendant argues that Knapp failed to state a promissory estoppel claim because she was an at-will employee and did not detrimentally rely on either the vacation or sick leave policy. (Doc. 7, at 8-11).

In order to maintain a cause of action for promissory estoppel, plaintiffs must show that "1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) justice can be avoided only be enforcing the promise." *Crouse v. Cyclops Indus.,* 745 A.2d 606, 610 (Pa. 2000). A

16

cause of action for promissory estoppel is equitable in nature and appropriate only "[w]here there is no enforceable agreement between the parties." *Id.* at 402; *see also Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (where "the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted" under Pennsylvania law). Although Knapp has pled a breach of contract claim, which the Court concludes is plausible, under FED. R. CIV. P. 8(d)(2)-(3), "a party may set out 2 or more statements of a claim . . . alternatively or hypothetically" and "regardless of consistency."

Here, Knapp's Complaint alleges an apparent promise between Defendant and its employees with respect to the accrued sick leave and vacation time. (Doc. 1, at ¶ 16). Based on her Complaint, Knapp detrimentally relied on that promise by not pursuing other employment opportunities. (*Id.*).

Defendant directs the Court to several cases which Defendant argues stand for the proposition that "Pennsylvania does not allow promissory estoppel claims in the at-will context." (Doc. 7, at 9). However, the cases that Defendant references deal primarily with Plaintiffs alleging promissory estoppel to overcome a wrongful discharge. *See, e.g.*, *Dyche v. Bonney*, 277 Fed. App'x 244, 246 (3d Cir. 2008) ("Dyche could not have reasonably relied upon [the promise] as a guarantee of ongoing employment."); *Bair v. Purcell*, 500 F. Supp. 2d 468, 492 (M.D. Pa. 2007) (granting motion for summary judgment on Plaintiff's promissory estoppel claim regarding Plaintiff's expectation that he would have a long term employment and business association with Defendant"); *Geiger v. AT&T Corp.*, 962 F.

Supp. 637, 648 (E.D. Pa. 1997) (dismissing complaint alleging promissory estoppel where Plaintiff took early retirement package in reliance on promise by Defendant that it would rehire him as a contractor); *Denillo v. Starwood Hotels & Resorts Worldwide, Inc.*, 2014 Pa. Super. Unpub. LEXIS 3164, at *9 (Pa. Super. Ct. 2014) (granting motion to dismiss because Appellant could not state a claim for promissory estoppel, where he was discharged for relying on a workplace policy).

Here, however, Knapp's at-will status does not necessarily preclude a claim for promissory estoppel where the alleged promise is severable from her at-will status. Indeed, the apparent promise regarding vacation and sick leave could exist collateral or incidental to Knapp's at-will status. Put differently, Defendant's ability to terminate Knapp at any time and with no cause remains unaffected by Defendant's promise that sick leave and vacation time would accrue for work performed and, therefore, would not be subject to retroactive forfeiture. Furthermore, in *Bair v. Purcell*, the court granted summary judgment on the plaintiffs' additional promissory estoppel claim, arguing that Plaintiffs were entitled to enforce a stock-buy out agreement based on a promise with the employer, not because of the at-will doctrine, but because the plaintiffs "do not allege any specific injury based on their reliance." 500 F. Supp at 492. Accordingly, it follows that because Defendant's promise with respect to sick leave and vacation time may be collateral to Knapp's at-will status, her at-will status does not necessarily preclude a claim for promissory estoppel.

Additionally, Defendant's argument that Knapp failed to plead detrimental reliance is unfounded. As discussed earlier, the policy within the Guidebook itself is not the only basis for Knapp's reliance. Taking her pleadings as true, she also relied on Defendant's course of action, which suggested that she had a legal entitlement to the sick leave and vacation time, over the several years she remained employed by Defendant. (Doc. 1, at ¶ 16). Moreover, nothing in the Guidebook suggested that Defendant had the ability to modify the sick leave and vacation time policy retroactively. Thus, Knapp reasonably alleges that she relied on Defendant's promise, given the circumstances that gave rise to the claimed reliance.

Finally, Defendant contends that Knapp failed to plead detrimental reliance because "as a matter of law" failing to pursue other employment opportunities does not constitute detrimental reliance. (Doc. 7, at 11). Defendant directs the Court to *Engstrom v. John Nuveen & Co.*, 668 F. Supp. 953, 963 (E.D. Pa. 1987), which it argues stands for the proposition that "merely failing to seek other employment is not detrimental reliance." (Doc. 7, at 11). However, *Engstrom* was decided on summary judgment, and, in reviewing Defendant's quotation from *Engstrom* in its full and original form within the text of the case, the Court notes that *Engstrom* states, "[o]n the facts of this case, merely failing to seek other employment is not detrimental reliance *because Engstrom must present sufficient evidence from which it could reasonably be found that Engstrom refused offers of comparable work.*" *Engstrom*, 668 F. Supp. at 963 (emphasis added). In light of this, by pleading that she has foregone other employment opportunities, Knapp's Complaint sufficiently puts Defendant on

notice as to her promissory estoppel claim and covers the "material points necessary to sustain recovery." *Menkowitz*, 154 F.3d at 124.

Thus, the Court concludes that Knapp has sufficiently pled a promissory estoppel claim. Defendant's Motion to Dismiss with respect to Count III will be denied.

### 4. Count IV – Unjust Enrichment

Defendant argues that Knapp's unjust enrichment claim must be dismissed because Knapp has not pled facts sufficient to show that she conferred any benefit on Defendant beyond her continued employment and that retention of that any benefit is unjust (Doc. 7, at 11-12).

To plead a claim for unjust enrichment, a plaintiff must allege that: (1) the plaintiff conferred benefits upon the defendant; (2) the defendant appreciated and accepted such benefits; and (3) it would be inequitable for the defendant to retain the benefit without payment of the value.[2] *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491 (E.D. Pa. 2008) (citing *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 622 (Pa. Super. 1999)).

Here, Knapp's Complaint sets forth the necessary allegations to plead a claim for unjust enrichment. If taken as true, the allegations in Knapp's Complaint suggest that Knapp conferred a benefit on Susquehanna Village Facility by working and foregoing other

---

[2] The Court notes that a plaintiff cannot recover for unjust enrichment if the parties are bound by a contract. *See Alpart*, 574 F.Supp. 2d. at 507. However, as discussed earlier, FED. R. CIV. P. 8(d)(2)-(3) allows for pleading of alternative theories of liability in the same complaint, even if those theories are inconsistent. Accordingly, an unjust enrichment claim can be pled in the alternative to a plausible breach of contact claim, as Plaintiff has done here.

employment opportunities, which Knapp was rewarded with accrued vacation and sick leave. (Doc. 1, at ¶ 16). Subsequently, the expected sick leave and vacation time that Knapp accrued by remaining employed by Defendant was summarily taken away from her. (*Id.* at ¶ 17). Moreover, the vacation and sick leave, which Knapp was deprived of, apparently held value, since, taking the allegations as true, Defendant sold the business and benefited economically by eliminating its employee's the vacation and sick leave. (*Id.* at ¶ 18). Finally, Knapp was not provided with any compensation for essentially forfeiting her earned vacation and sick leave. (*Id.* at ¶ 17).

Defendant argues that the Court should not afford any weight to Plaintiff's allegation regarding the value of the transaction between Defendant and the new operator. (Doc. 7, at 13). Nonetheless, the Court rejects Defendant's argument because the allegation is a properly pleaded factual allegation, which seems to be supported by the other allegations in the Complaint and renders her legal claim facially plausible. *See Iqbal*, 556 U.S. at 678.

As such, the Court concludes that Plaintiff has sufficiently pled facts to sustain an unjust enrichment claim. Accordingly, Defendant's motion to dismiss with respect to Count IV will be denied.

### 5. Class Action

Defendant argues that "a finding that Plaintiff's Complaint fails to state a claim under Rule 12(b)(6) disqualifies Plaintiff as a proper class representative," and "[w]ithout a class representative who has standing to bring an action against Defendant, there can be no

class action." (Doc. 7, at 14). Because the Court concludes that Plaintiff's Complaint did

not fail to state a claim under Rule 12(b)(6), the Court rejects Defendant's argument that the

class action must be dismissed and will deny Defendant's motion on this basis.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss (Doc. 6).

A separate Order follows.

Robert D. Mariani
United States District Court Judge